**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DALIYL RAA'ID MUHAMMAD,** | : | **CIVIL NO. 1:08-CV-1287** |
| | : | |
| **Petitioner** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT JAY LANE,** | : | |
| *et al.,* | : | |
| | : | |
| **Respondents** | : | |

**MEMORANDUM**

Petitioner, Daliyl Raa'id Muhammad ("Muhammad"), filed the instant

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a

judgment and conviction imposed in the Court of Common Pleas of Dauphin

County. (Doc. 1). He is presently proceeding via an amended petition for writ of

habeas corpus. (Doc. 27). For the reasons discussed below, the court will deny the

amended petition.

**I.    Procedural History**

Muhammad filed his initial petition for writ of habeas corpus on July 7, 2008.

(Doc. 1). Respondents filed an answer and memorandum in response to the claims

raised in the original habeas petition. (Docs. 13, 14). On February 25, 2009,

Muhammad filed a motion to stay the proceedings pending exhaustion of his state

court remedies. (Doc. 19). On March 20, 2009, the court determined that it was

appropriate to stay this matter in accordance with the stay and abeyance rule

announced in <u>Crews v. Horn</u>, 360 F.3d 146, 151 (3d Cir. 2004), and granted the motion to stay. (Doc. 21).

On June 17, 2015, Muhammad filed a motion to reopen the case. (Doc. 26). After Muhammad's compliance with the exhaustion requirement, the court reopened this action. (Doc. 28).

## II.   **Factual Background**

The factual background of this case has been summarized by the state courts as follows:

> The evidence presented establishes that on the evening of January 13, 2002, James Nickol called [Muhammad] in order to purchase marijuana. [Muhammad] indicated he could sell Nickol three pounds of the drug for $2,400, and agreed to meet Nickol later that evening on South 14th Street in Harrisburg, Pennsylvania. Nickol and a companion, Derrick Kleugel, then drove to Harrisburg. Upon their arrival, [Muhammad] informed them they would have to walk a few blocks to get the marijuana. [Muhammad] was accompanied by another man, later identified as co-defendant Michael Cameron. At some point while the four men were walking down South 15th Street, [Muhammad] and Cameron slowly began to lag behind the victims. Gunfire then rang out and Nickol was shot three times in the back, three times in the stomach, and once in the hip. Kleugel was shot twice in the back and once in the hip. Nickol testified that immediately after the incident, he felt a burning sensation and fell to the ground. He further testified that [Muhammad] then climbed on top of him while holding a shiny object in his hand and demanded money. Kleugel also testified that after he fell, someone searched him and demanded money. N.T., 8/6/03, at 81-83, 85-88, 90-94; N.T., 8/7/03, at 162-164, 166.
>
> [Muhammad] fled the scene before police and emergency personnel responded to the victims. He was apprehended following considerable resistance on July 7, 2002, almost six months later. N.T., 8/7/03, at 179, 182-183, 209-211.

Commonwealth v. Muhammad, 2018 WL 1405059, *1 (Pa. Super. March 21, 2018) (citing Commonwealth v. Muhammad, 860 A.2d 1132, 1767 MDA 2003 (Pa. Super. filed August 17, 2004) (unpublished memorandum at 2-3)).

## III.   State Court Proceedings[1]

On August 8, 2003, a jury convicted Muhammad of attempted murder, robbery, conspiracy, aggravated assault, escape, and related charges for his involvement, along with co-defendant Michael Cameron, in the shootings of Jacob Nickol and Derrick Kleugel.  (See https://ujsportal.pacourts.us, Commonwealth v. Muhammad, electronic docket number CP-22-CR-0002967-2002 (Dauphin Cty. Ct. Com. Pl.)).  On November 2, 2003, the trial court sentenced Muhammad to an aggregate term of 37 to 90 years' imprisonment.  (See id.)

Muhammad filed a timely direct appeal.  On August 17, 2004, the Pennsylvania Superior Court affirmed Muhammad's judgment of sentence in part and vacated in part.  (Doc. 14-7 at 87-99, Commonwealth v. Muhammad, No. 1767 MDA 2003 (Pa. Super. August 17, 2004)).  The Superior Court concluded that Muhammad's convictions for the attempted homicide and aggravated assault on James Nickol should have merged, and therefore, one of his sentences for aggravated assault was vacated.  (Id.)  However, the Superior Court explained that

---

[1] A federal habeas court may take judicial notice of state court records. Minney v. Winstead, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); see also Reynolds v. Ellingsworth, 843 F.2d 712, 714 n.1 (3d Cir. 1988).  Accordingly, in reviewing this petition, the court takes judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Dauphin County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania.

because Muhammad was convicted of two counts of aggravated assault for which the trial court imposed concurrent sentences, the Superior Court's decision did not alter the trial court's sentencing, and thus, remand for resentencing was not required. (Id.) Muhammad did not file a petition for allowance of appeal in the Pennsylvania Supreme Court. Therefore, his judgment of sentence became final on September 16, 2004, when the time to pursue allowance of appeal in the Pennsylvania Supreme Court expired. See PA. R.A.P. 1113(a); see also 42 PA. CONS. STAT. § 9545(b)(3).

Muhammad subsequently filed five *pro se* petitions for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. Each petition was denied.

On June 17, 2005, Muhammad filed his first *pro se* PCRA petition. (Doc. 14-8, PCRA Petition). On November 2, 2005, the PCRA court appointed counsel to represent Muhammad and granted leave to file an amended PCRA petition. (See Doc. 14-9 at 13). On February 8, 2006, appointed counsel filed a motion to withdraw as counsel, asserting that the issues raised in the *pro se* PCRA petition were frivolous and any issue to be raised in an amended PCRA petition would be frivolous. (Doc. 14-9 at 8-28, Petition to Withdraw as Counsel). On February 10, 2006, the PCRA court issued an order providing notice of its intent to grant the motion to withdraw and to dismiss the PCRA petition. (Doc. 14-9 at 67, Order of Court dated February 10, 2006). On June 29, 2006, the PCRA court dismissed the petition, and issued a memorandum on September 13, 2006. (Doc. 14-10 at 12; Doc. 14-10 at 14-49). Muhammad filed a *pro se* appeal to the Pennsylvania Superior

Court.  (Doc. 14-10 at 51-76; Doc. 14-11 at 1-80).  On November 16, 2007, the

Pennsylvania Superior Court affirmed the denial of PCRA relief.  (Doc. 14-11 at 82-

86, <u>Commonwealth v. Muhammad</u>, No. 275 MDA 2007 (Pa. Super. November 16,

2007)).  On December 13, 2007, Muhammad filed a petition for allowance of appeal

to the Pennsylvania Supreme Court.  (Doc. 14-11 at 88-100; Doc. 14-12 at 1-76).  On

June 4, 2008, the Pennsylvania Supreme Court denied Muhammad's petition for

allowance of appeal.  (Doc. 14-12 at 78, <u>Commonwealth v. Muhammad</u>, No. 1071

MAL 2007, 952 A.2d 676 (Pa. 2007) (Table) (*per curiam*)).

On May 23, 2011, Muhammad filed a second *pro se* PCRA petition.  (<u>See</u>

https://ujsportal.pacourts.us, <u>Commonwealth v. Muhammad</u>, electronic docket

number CP-22-CR-0002967-2002).  On August 17, 2011, the PCRA court denied the

petition.  (<u>See</u> <u>id.</u>)  Muhammad filed a timely notice of appeal to the Pennsylvania

Superior Court.  On March 26, 2012, the Pennsylvania Superior Court affirmed the

PCRA court's denial of relief.  <u>Commonwealth v. Muhammad</u>, No. 1605 MDA 2011

(Pa. Super. March 26, 2012).  On April 11, 2012, Muhammad filed an application

requesting re-argument or reconsideration of the Superior Court's decision.  <u>Id.</u>  On

June 8, 2012, the Superior Court denied the request.  <u>Id.</u>

On or about May 6, 2012, Muhammad filed a third *pro se* PCRA petition.  (<u>See</u>

https://ujsportal.pacourts.us, <u>Commonwealth v. Muhammad</u>, electronic docket

number CP-22-CR-0002967-2002).  On May 31, 2013, Muhammad filed an amended

petition.  (<u>See</u> <u>id.</u>)  On February 11, 2014, the PCRA court dismissed the petition as

untimely.  (<u>See</u> <u>id.</u>)  Muhammad filed a notice of appeal to the Pennsylvania

Superior Court.  On January 23, 2015, the Pennsylvania Superior Court affirmed

the PCRA court's order dismissing the petition as untimely. (Doc. 29-1, <u>Commonwealth v. Muhammad</u>, No. 535 MDA 2014 (Pa. Super. January 23, 2015)).

On March 9, 2015, Muhammad filed his fourth *pro se* PCRA petition. (<u>See</u> https://ujsportal.pacourts.us, <u>Commonwealth v. Muhammad</u>, electronic docket number CP-22-CR-0002967-2002). On July 30, 2015, the PCRA court dismissed the petition. (<u>See</u> <u>id.</u>) Muhammad filed a notice of appeal to the Pennsylvania Superior Court. On July 20, 2016, the Pennsylvania Superior Court affirmed the PCRA court's order dismissing the petition. <u>Commonwealth v. Muhammad</u>, No. 1518 MDA 2015 (Pa. Super. July 20, 2016).

On October 7, 2016, and October 28, 2016, Muhammad filed his fifth and sixth PCRA petitions.[2] On April 7, 2017, the PCRA court dismissed the petition as untimely. <u>Commonwealth v. Muhammad</u>, 2018 WL 1405059, at *3. Muhammad filed a timely notice of appeal to the Pennsylvania Superior Court. On March 21, 2018, the Pennsylvania Superior Court affirmed the PCRA court's order dismissing the petition. <u>Commonwealth v. Muhammad</u>, 2018 WL 1405059.

## IV. <u>Standards of Review</u>

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. <u>Preiser v. Rodriguez</u>, 411 U.S.

---

[2] The petitions were duplicative in substance and, therefore, the PCRA court treated them as a single PCRA petition.

475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I] t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 68.

## A. Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).[3] Respect for the state court system requires that the petitioner demonstrate that the claims in question have been

---

[3] In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and "unavailable" for purposes of exhausting state court remedies under § 2254. Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004). Thus, to exhaust state remedies, a Pennsylvania prisoner need appeal only to the Pennsylvania Superior Court.

"fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999); see also Nara v. Frank, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the petitioner need not cite "book and verse" of the federal Constitution, Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting Picard, 404 U.S. at 275, 92 S.Ct. 509).

In this case, respondents contend that Muhammad failed to properly exhaust several claims raised in the federal habeas petition, which the court will address seriatim by claim. (Doc. 42-1 at 9-19).

### B.    Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 491, 497-98 (3d Cir. 2005).  This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." Breighner v. Chesney, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[4]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Porter, 276 F. Supp. 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. at 408-09.

---

[4] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

**C. Ineffective Assistance of Counsel Standard**

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This right to effective assistance of counsel also extends to the first appeal. <u>Lewis v. Johnson</u>, 359 F.3d 646, 656 (3d Cir. 2004). In <u>Strickland</u>, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. <u>Strickland</u>, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. <u>See</u> <u>id.</u>

In evaluating the first prong of the <u>Strickland</u> test, the court must be "highly deferential" toward counsel's conduct. <u>Id.</u> at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. <u>Id.</u> ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "<u>Strickland</u> and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." <u>Rolan v. Vaughn</u>, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing <u>Strickland</u>, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. <u>Strickland</u>, 466 U.S. at 691; <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. See Thomas, 428 F.3d at 502.

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the Strickland test. Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. Strickland, 466 U.S. at 697.

## V. <u>Discussion</u>

In the instant petition, Muhammad argues that: (1) an inaccurate jury instruction relating to attempted homicide violated his due process and equal protection rights, and trial counsel was ineffective for failing to object to the jury instruction; (2) the prosecution committed a <u>Brady</u> violation with respect to information regarding prosecution witness James Nickol, and trial counsel failed to effectively cross-examine Nickol; (3) he received an illegal sentence, and trial counsel was ineffective for failing to object to aspects of his sentencing; and, (4) his post-sentence counsel had a conflict of interest. (Doc. 27).

## A.    Jury Instruction Claim[5]

Muhammad argues that an inaccurate jury instruction relating to the crime of attempted homicide violated his due process and equal protection rights. (Doc. 27-1 at 8-16). Muhammad further argues that trial counsel was ineffective for failing to object to the jury instruction on attempted homicide. (Id.) Muhammad raised this claim on direct appeal and on collateral review.

A review of the trial transcript reveals that the trial judge instructed the jury on the elements of attempted homicide as follows:

> Let us begin with the charge of criminal attempt to commit criminal homicide. First of all, you generally need to understand that the word criminal homicide in common parlance is the word murder. And you also need to understand some general principles about that term murder so that you can make other decisions with regard to the instructions I am giving you.
>
> Under the law of our Commonwealth, a person is deemed to commit a murder if they kill another person and do so with the intent to kill. So a murder means that you kill another person and you are intending to do that. Whatever act you did, your conscious intent was to kill somebody.
>
> A person has a specific intent to kill if he has a fully formed intent to kill and is conscious of his intention; that he knows what he is doing, and he is aware that that is what he's going to do.
>
> The specific intent to kill needed for attempted murder does not require planning or previous thought of any particular length of time. It can occur quickly. All that is necessary is that there be enough time so that the Defendant can and does fully form an intent to kill and is conscious that that is his intention.

---

[5] Respondents argue that this claim was presented to the state courts as a claim of trial court error under state law, not as a due process or equal protection violation and, as such, was waived under state law and procedurally defaulted in this forum. (Doc. 42-1 at 10). The court finds that this claim was fairly presented to the state courts and is subject to review on the merits.

In order to find the Defendant guilty of attempted homicide, more precisely, criminal attempt to commit criminal homicide, you must be satisfied that the following three elements – remember we talked about elements – three elements have to be proven beyond a reasonable doubt:

First, that the Defendant or an accomplice or a co-conspirator did a certain act. That is, that he attempted to cause the death of James Nickol. In this case the Commonwealth's allegation of attempted criminal homicide is specific to James Nickol.

Second, that the Defendant or an accomplice or a co-conspirator did the act or acts with a specific intent to kill James Nickol.

And third, that the act or acts constituted a substantial step toward the commission of that crime.

Realizing, of course, there may be many steps that someone may take leading up to the commission of a crime, in this case it must not be a trite step. It must be a substantial step.

A person is deemed to intend to commit the crime of homicide, and in this case, if he intended to cause the death of James Nickol. A person cannot be guilty of an attempt to commit a crime unless he has, as I instructed you, a firm intent to commit that crime.

If he has not definitely made up his mind, if his purpose is uncertain or wavering, he is deemed to lack the kind of intent that is required for this particular crime.

As I have indicated to you, a person cannot be guilty of an attempt to commit a crime unless he does an act which constitutes a substantial step toward the commission of that crime. An act is deemed to be a substantial step if it is a major step towards the commission of that crime and also strongly corroborates the jury's belief that that person at the time that he acted had a firm intent to commit that crime.

An act can be a substantial step, even though other steps would have been taken before the crime could be carried out.

If you are satisfied that these three elements of attempted criminal attempt to commit criminal homicide have been proven beyond a reasonable doubt, then the Defendant should be found guilty of that offense. Otherwise, you must find the Defendant not guilty of that crime.

As you will note and we will go over in a moment, on that particular crime, there is a second and collateral determination that the jury must make. And you will see it on the verdict slip when we go over that in a little while. But suffice at this point in time, the jury is also required – realize now, this is criminal attempt to commit criminal homicide. That means by its very language, nobody died, but somebody tried to make somebody die. That is the essence of the allegation, okay.

Now, there is a second collateral decision or determination that the jury must make in this particular kind of crime, and that is in the course – if you find that someone attempted to commit a criminal homicide in this case, and the Defendant is liable for that either directly or through the actions of an accomplice or co-conspirator, then you must tell us whether or not you also find that whatever act or acts they did, or he did, or however you find it did, constituted and resulted in serious bodily injury to the victim. I will discuss that more when I go over that part of the instruction.

You also must be convinced beyond a reasonable doubt that the victim sustained serious bodily injury as a result of whatever act or acts were undertaken to attempt to commit the criminal homicide.

(Doc. 14-5 at 39-42, N.T. 8/8/03, at 259:11-262:25). During deliberations the jury requested clarification of the elements of the charge of attempted homicide, and the trial judge reiterated each element of the offense. (Doc. 14-5 at 74-76, N.T. 8/8/03, at 294:24-296:24). On direct appeal, Muhammad argued that the trial court erred in explaining the elements of attempted homicide. The Superior Court denied relief with respect to this claim and found that the trial court's instructions on criminal attempt/homicide, accomplice liability, and conspiracy were proper statements of Pennsylvania law. (Doc. 14-7 at 94-96, Commonwealth v. Muhammad, No. 1767 MDA 2003 (Pa. Super. August 17, 2007)).

In his PCRA petition, Muhammad again argued that the trial court committed error when explaining the elements of attempted homicide. (Doc. 14-8

at 18-20, PCRA Petition). The PCRA court discussed, at length, the jury instruction at issue. (Doc. 14-10 at 22-25, <u>Commonwealth v. Muhammad</u>, Nos. 2967 CR 2002, 3009 CR 2002, PCRA Memorandum and Order (September 13, 2006)). The PCRA court ultimately denied relief with respect to this claim and, on appeal, the Pennsylvania Superior Court affirmed the denial of PCRA relief. (<u>Id.</u>; Doc. 14-11 at 82, <u>Commonwealth v. Muhammad</u>, No. 275 MDA 2007 (Pa. Super. November 16, 2007)). The PCRA court found as follows:

> The Defendant next claims that the Court committed error when explaining to the jury the elements of Attempted Homicide. The Defendant specifically referred to the Court's instruction in which we said, "Second, that the Defendant or an accomplice or a co-conspirator did the act or acts with the specific intent to kill James Nickol." (N.T. 250, lis. 19-21). The Defendant claims that this instruction caused the jury to convict the Defendant even if the Defendant did not have the specific intent to kill the Victims as long as his co-conspirator or accomplice did have such intent.

> This same issue was raised by the Defendant in <u>Commonwealth v. Wayne</u>, 553 Pa. 614, 720 A.2d 456, 464 (Pa. 1998). In <u>Wayne</u>, the trial court specifically stated during its jury charge that a defendant can be convicted of murder even if he did not have the intent to kill as long as his co-conspirator who committed the crime had the intent to kill. The Pennsylvania Supreme Court specifically ruled that the trial court's instruction was in error. The Pennsylvania Supreme Court specifically stated, ". . . an individual accused of first degree murder must possess the specific intent to kill whether the accused is the actual shooter, an accomplice, or a conspirator." <u>Commonwealth v. Wayne</u>, 553 Pa. 614, 720 A.2d 456, 464 (Pa. 1998), citation omitted.

> We agree that this same standard applies in a case of attempted murder. The Pennsylvania Supreme Court has stated,

>> Criminal attempt to murder is defined by reading the attempt statute, 18 Pa. C.S. § 901(a), in conjunction with the murder statute, 18 Pa. C.S. § 2501(a). Thus, attempted murder is defined as taking a substantial step towards an intentional killing.

> Commonwealth v. Anderson, 538 Pa. 574, 650 A.2d 20, 23
> (Pa. 1994).
>
> Despite the Defendant's mischaracterization, we believe our
> instruction does require the jury to find that the Defendant possessed
> the intent to kill, regardless of whether he actually pulled the trigger.
> We specifically stated in our instruction, "A person cannot be guilty of
> an attempt to commit a crime unless he has, as I instructed you, a firm
> intent to commit that crime." (N.T. 261, lis. 6-7).
> . . .
>
> [W]hen we stated that an accomplice or co-conspirator must have had
> the intent to kill, that by definition, means that the Defendant had the
> same intent. Otherwise, the person committing the act could not be
> considered an accomplice or a co-conspirator. It is their joint intent
> (i.e. to kill) that created the conspiracy/accomplice liability.
>
> However, even if we gave an ambiguous jury instruction, the
> Defendant would still not have been prejudiced. The Pennsylvania
> Supreme Court explained, "A faulty jury charge will require the grant
> of a new trial only where the charge permitted a finding of guilt
> without requiring the Commonwealth to establish the critical elements
> of the crimes charged beyond a reasonable doubt." Commonwealth v.
> Wayne, 720 A.2d at 465.

(Doc. 14-10 at 22-24, Commonwealth v. Muhammad, Nos. 2967 CR 2002, 3009 CR

2002, PCRA Memorandum and Order (September 13, 2006)).

"In a criminal trial, the State must prove every element of the offense, and a

jury instruction violates due process if it fails to give effect to that requirement."

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (citing Sandstrom v. Montana, 442

U.S. 510, 520-21 (1979)). Where a federal habeas petitioner challenges jury

instructions given in a state criminal proceeding, the only question for the court to

consider is "whether the ailing instruction by itself so infected the entire trial that

the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 71-72

(1991) (quoting Cupp v. Naughton, 414 U.S. 141, 147 (1973)). "It is well established

17

that the instruction 'may not be judged in artificial isolation,' but must be viewed in the context of the instructions as a whole and the trial record." Id. A trial judge is given much discretion in determining the language of the jury charge. See United States v. Flores, 454 F.3d 149, 161 (3d Cir. 2006) (citing United States v. Goldblatt, 813 F.2d 619, 623 (3d Cir. 1987)). Further, the Third Circuit Court of Appeals has observed that a habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 111 (3d Cir. 1997). District courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it." Id. at 110.

Upon review of the entirety of the transcripts, the court finds that the trial court provided proper instructions. The trial judge stated that in order to find Muhammad guilty of attempted homicide, all of the elements of the crime had to be proven beyond a reasonable doubt. The trial judge carefully instructed the jury on all three elements of the crime, i.e., that Muhammad or an accomplice or a co-conspirator attempted to cause the death of James Nickol, that Muhammad or an accomplice or a co-conspirator did the act or acts with a specific intent to kill James Nickol, and the act or acts constituted a substantial step toward the commission of that crime. The Superior Court held that the trial court's instructions on attempted homicide, accomplice liability, and conspiracy were proper statements of Pennsylvania law. Moreover, the PCRA court held that the Commonwealth

provided sufficient record evidence of each of the critical elements of attempted homicide. (Doc. 14-10 at 25). The state courts' decisions are neither contrary to, nor an unreasonable application of, clearly established federal law, nor are they an unreasonable determination of the facts in light of the evidence presented. Hence, Muhammad is not entitled to habeas relief on this claim.

Furthermore, Muhammad has failed to establish a claim for ineffective assistance of trial counsel because the Superior Court expressly determined that the jury instructions were proper statements under Pennsylvania law. The jury instructions were sufficient, and trial counsel cannot be deemed ineffective for failing to object to the instructions. See Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004). In sum, trial counsel's failure to raise a meritless objection did not violate professional norms and could not have prejudiced Muhammad. See Strickland, 466 U.S. 668.

### B.   Brady Claim

#### 1.   *Exhaustion*

Muhammad alleges that the prosecution committed a Brady[6] violation with respect to information pertaining to James Nickol. (Doc. 27-1 at 16-22). Specifically, he alleges that the prosecution presented incorrect information on Nickol's probation status at trial, and the prosecution did not inform Muhammad that a bench warrant was issued for Nickol when he failed to appear in court on March 13,

---

[6] Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

2003.  (Id.)  Respondents argue that these claims were never presented to the state courts.  (Doc. 42-1 at 14).  It is clear that Muhammad did not raise the Brady claim in state court.  Therefore, the Brady claim is procedurally defaulted and will be addressed only upon a showing of cause and prejudice or a fundamental miscarriage of justice.

In an attempt to excuse the procedural default of this claim, Muhammad asserts that the Brady claim was never presented to the state courts because the prosecution suppressed the evidence related to Nickol.  (Doc. 48 at 6).  However, the Third Circuit Court of Appeals has held that "a general claim that the prosecutor has suppressed exculpatory information cannot satisfy the exhaustion requirement as to all [] Brady claims that a habeas petitioner may bring."  Landano v. Rafferty, 897 F.2d 661, 669 (3d Cir. 1990).  The court concludes that Muhammad has not exhausted the Brady claim in his habeas petition, and this argument does not excuse his procedural default of the claim.  See Landano, 897 F.2d at 669-70 ("[The United States Court of Appeals for the Third Circuit] has consistently held that in complying with the exhaustion requirement a habeas petitioner must not only provide the state courts with his legal theory as to why his constitutional rights have been violated, but also the factual predicate on which that legal theory rests.  This requirement is especially appropriate in the context of an alleged Brady violation since the materiality of the suppressed information is determined by considering the strength of the state's case as a whole." (citing United States v. Agurs, 427 U.S. 97, 112-13 (1976))).

Muhammad asserts that he presented this claim in his PCRA petition in the context of prosecutorial misconduct for eliciting false testimony of James Nickol. (Doc. 48 at 4). To avoid a procedural default, a petitioner must show that the state courts were given a "fair opportunity" to analyze the facts pertaining to his constitutional claim under controlling law and that the federal claim is the substantial equivalent of that presented to the state courts. Picard, 404 U.S. at 278. But, "it is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982) (internal citations omitted). The Third Circuit Court of Appeals "has interpreted substantial equivalence to mean both the legal theory and the facts on which a federal claim rests must have been presented to the state courts." Landano, 897 F.2d at 669. Muhammad may have presented the facts underlying his Brady claim to the state court, but he certainly did not include the legal theory in his PCRA petition. Therefore, the state court did not have a fair opportunity to evaluate Muhammad's Brady claim.

Muhammad also asserts that the evidence supposedly suppressed by the Commonwealth would demonstrate that Nickol was not trustworthy, and "[w]ithout Nickol's testimony it is questionable whether sufficient evidence would have existed" to find him guilty. (Doc. 27-1 at 21-22). Pursuant to Schlup, Muhammad is required to show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 512 U.S. 298, 327 (1995). Beyond self-serving generalities, Muhammad has failed to make any showing of a likely change in the outcome of his

trial. The court concludes that Muhammad failed to establish cause and prejudice or demonstrate a fundamental miscarriage of justice.

We will state the obvious. Requiring exhaustion of the <u>Brady</u> claim, now, would be futile. It is clear that Muhammad has no avenue through which to present his <u>Brady</u> claim to the state courts because any PCRA petition would be untimely. <u>See</u> 42 PA. CONS. STAT. § 9545(b)(1) (explaining that collateral actions must be filed "within one year of the date the judgment becomes final[.]"). Therefore, the court finds that Muhammad has procedurally defaulted this claim.

### 2. *Ineffective Assistance of Counsel Claim*

Muhammad argues that trial counsel was ineffective for failing to discover that Nickol was not on probation when he testified, and for failing to properly attack Nickol's credibility on cross-examination. (Doc. 27-1 at 22-24).

"[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." <u>Dell v. Straub</u>, 194 F. Supp.2d 629, 651 (E.D. Mich. 2002); <u>see</u> <u>Fugate v. Head</u>, 261 F.3d 1206, 1219 (11th Cir. 2001); <u>Dows v. Wood</u>, 211 F.3d 480, 489 (9th Cir. 2000). Counsel's approach to impeachment is a tactical decision and "such decisions do not constitute deficient conduct simply because there are better options." <u>Reynoso v. Giurbino</u>, 462 F.3d 1099, 1113 (9th Cir. 2006). However, if a witness "had a strong reason to lie, and testify in a manner that would help the prosecutor, in the hopes of getting favorable treatment from the Commonwealth, that establishes the potential bias that would [constitute] compelling impeachment evidence" because such information would benefit a jury in assessing the reliability of such a witness. <u>Grant v. Lockett</u>, 709

F.3d 224, 236 (3d Cir. 2013). Notably, counsel's impeachment strategy is not ineffective unless the "defendant [can] overcome the presumption that, under the circumstances, the challenged action [or lack of action] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (citation omitted).

With respect to Muhammad's claim that trial counsel was ineffective for failing to discover that Nickol was not on probation when he testified, the trial transcript reveals that trial counsel extensively questioned Nickol about his probation status and criminal history. (Doc. 14-3 at 72-81, N.T. 8/6/03, 101:15-110:7). Accordingly, the court will deny this ineffectiveness claim.

Muhammad also claims that trial counsel was ineffective for not attacking Nickol's credibility with a prior inconsistent statement regarding his possession of a gun. The PCRA court concluded that this ineffectiveness claim could not succeed because, ultimately, there was no reasonable probability that this inconsistency would have likely changed the outcome of the trial. The PCRA court addressed this claim as follows:

> The Defendant claims that District Attorney Michael A. Consiglio, Esquire, elicited false testimony from one of the victims, James Nickol. During the trial, the Defendant's trial attorney, Sanford A. Krevsky, Esquire, cross-examined Mr. Nickol on the issue of whether he (Nickol) originally told the police that he (Nickol) possessed a firearm at the time of the incident. Notes of Testimony, August 5-8, 2003, (hereinafter, "N.T.") 110, lis. 14-25, 111, lis. 1-18. Mr. Nickol admitted that he originally did not disclose this fact to the police. N.T. 111, line 12.
>
> Thereafter, on re-direct examination, District Attorney Consiglio asked Mr. Nickol the following:

Q. [MR. CONSIGLIO] During that conversation with the officers, did you mention the fact that you or Derrick had a gun?

A. [DEFENDANT] No.

Q. February 12, you are at the police station?

A. Yes.

[Q.] During that conversation, that's when the officers confront you with what Derrick said?

A. Yes.

Q. That is when you say, all right, I had a gun?

A. Yes[.]

Q. Derrick had a gun?

A. Yes, sir.

Q. At your preliminary hearing – at the preliminary hearing for the Defendant on September 4, you also testified that you guys had guns?

A. Yes.

N.T. 131, lis. 15-25, 132, lis. 1-5.

The Defendant alleges that there is no instance in the preliminary hearing transcript where Mr. Nickol testified to possessing a firearm at the time of the crime. The Defendant claims that District Attorney Consiglio purposely elicited false information from the Defendant to presumably bolster his (Nickol's) credibility.

Unfortunately, the Court does not possess a copy of the Defendant's preliminary hearing transcript as it was never admitted into the Record. However, even if Mr. Nickol's statement about his preliminary hearing testimony was incorrect, this testimony did not prejudice the Defendant. This is because Mr. Nickol already admitted that when he was first questioned by the police he denied possessing a handgun. (N.T. 111, line 12, 131, lis. 15-17). Mr. Nickol also admitted that it was not until the police confronted him with the statement of

the other victim, Derrick Kleugel, that he (Nickol) admitted to possessing a gun. (N.T. 111, lis. 14-17, 131, lis. 20-22). Therefore, the jury already knew that Mr. Nickol initially tried to conceal from police the fact that he had been carrying a firearm. As a result, we find that [Muhammad] was not prejudiced regardless of Mr. Nickol's preliminary hearing testimony.

Further, failure of Mr. Nickol to mention at the preliminary hearing that he possessed a firearm is not the same as if he had denied possessing a firearm. Thus, the Defendant has not asserted that there is a direct contradiction between the preliminary hearing testimony and the trial testimony about the underlying factual issue.

(Doc. 14-10 at 15-16, Commonwealth v. Muhammad, Nos. 2967 CR 2002, 3009 CR 2002, PCRA Memorandum and Order (September 13, 2006)).

In evaluating whether counsel's performance was deficient, the court must defer to counsel's tactical decisions, avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. Strickland, 466 U.S. at 689. The court finds that the record relied upon by the state court supports a finding that trial counsel was not ineffective in his cross-examination of Nickol. As the PCRA court properly observed, the jury already knew that Nickol initially tried to conceal from police that he was carrying a firearm. In other words, the inconsistency was already exposed. Clearly, Muhammad was not prejudiced regardless of Nickol's potentially inconsistent testimony at the preliminary hearing. Muhammad has not provided sufficient evidence to show that the representation by his trial counsel fell "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 689-90. Additionally, Muhammad has not demonstrated that there was a reasonable probability that if his trial counsel pursued a different line of questioning on cross-examination of Nickol, the result

would have been different.  Consequently, the court will deny habeas relief on this ineffectiveness claim.

### C.  Illegal Sentence Claims

Muhammad argues that his sentence is illegal because the sentencing court relied on erroneous facts, the sentencing court did not give reasons for a disparate sentence compared to his co-defendant, and he was harshly sentenced as a result of the trial court judge's participation in the jury trial.  (Doc. 27-1 at 25-34).  Muhammad further argues that trial counsel rendered ineffective assistance by failing to object to these alleged defects.  (Id.)  The record reflects that these claims were not properly exhausted in state court.

On appeal from the denial of PCRA relief, the Pennsylvania Superior Court addressed Muhammad's claims regarding the legality of his sentence and found that these issues were waived.  (Doc. 14-11 at 82-86, Commonwealth v. Muhammad, 944 A.2d 796 (Pa. Super. 2007)).  The Superior Court found as follows:

> Muhammad argues that trial counsel was ineffective for failing to challenge the discretionary aspects of his sentence.  In particular, Muhammad claims that the sentencing court abused its discretion in: relying on factually erroneous information; relying on hearsay statements of the non-testifying co-defendant; failing to consider mitigating circumstances regarding Muhammad's role in the shooting; and failing to state sufficient reasons on the record for the disparity in sentences between Muhammad and his co-defendant.  (Appellant's Brief at 20, 22).
>
> We conclude that this ineffectiveness claim is waived.  Muhammad admits that he raised this claim for the first time in his *pro se* objections to counsel's Turner/Finley letter.  (Id. at 16-17.)  He did not raise it in his initial *pro se* PCRA petition, which would have been his first opportunity to do so.  See 42 Pa.C.S.A. §9544(b).  Muhammad attempts to circumvent the waiver rule by asserting that he had asked appointed PCRA counsel to include this claim in the Turner/Finley

letter, but counsel failed to do so. The only evidence to support this assertion is an unsigned, typed letter to PCRA counsel, which Muhammad attached to his objections to the <u>Turner/Finley</u> letter, in which he stated that he wanted counsel to include the sentence/ineffectiveness issue. However, Muhammad makes no mention of either this issue or this request in his objections to the <u>Turner/Finley</u> letter. Thus, we will not consider it.

Even if Muhammad had properly preserved this claim, we would conclude that it is without merit. Contrary to Muhammad's assertions, these sentencing claims *were*, in fact, raised in a post-sentence motion to modify sentence, which was ultimately denied. Therefore, counsel cannot be held ineffective for failure to raise them.

(Doc. 14-11 at 84-85, <u>Commonwealth v. Muhammad</u>, 944 A.2d 796 (Pa. Super. 2007) (footnotes omitted)).

Muhammad has waived these claims under state law and, as a result, has procedurally defaulted these claims in this forum. <u>See</u> <u>Suarez v. Pennsylvania</u>, 2014 WL 2922283 (M.D. Pa. 2014) (concluding that where the state court on direct appeal found the claims waived because no objection had been made at trial, federal habeas review is precluded unless the petitioner can demonstrate cause and prejudice, or that a failure to consider the claims will result in a fundamental miscarriage of justice) (citing <u>Sloan v. Attorney General of Pennsylvania</u>, 2010 U.S. Dist. LEXIS 101854, *33-34 (W.D. Pa. 2010)); <u>Solano v. Lamas</u>, 2014 WL 2567166 (M.D. Pa. 2014). Muhammad is not entitled to federal habeas review unless he can meet his burden of establishing "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Harris v. Reed</u>, 489 U.S. 255, 260-63 (1989); <u>Morris v. Horn</u>, 187 F.3d 333, 342 (3d Cir. 1999).

Muhammad concedes that he failed to present the illegal sentencing claims in his initial PCRA petition. (Doc. 48 at 8). Instead, he relies on Martinez v. Ryan, 566 U.S. 1 (2012), to excuse these procedurally defaulted claims. (Id. at 8-9) The United States Supreme Court has recognized that, under certain circumstances, the procedural default of an ineffective assistance of trial counsel claim may be excused where the default was caused by ineffective assistance of counsel in post-conviction collateral proceedings. See Martinez, 566 U.S. at 6-18. Specifically, the Martinez Court held that:

> [A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Martinez, 566 U.S. at 17.

The Martinez Court limited its holding to cases where "under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding." Id. Shortly thereafter, the Supreme Court revisited its Martinez holding, extending it not only to cases where state procedural law expressly prohibited ineffective assistance claims on direct appeal, but also where "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." Trevino v. Thaler, 569 U.S. 413, 429 (2013). The Third Circuit has subsequently examined Pennsylvania procedural law and found that Martinez applies in Pennsylvania. Cox v. Horn, 757 F.3d 113, 124 n.8 (3d Cir. 2014).

28

Muhammad's claim of ineffective assistance of counsel at his collateral proceedings falls within the scope of the <u>Martinez</u> rule.  Under <u>Martinez</u>, the failure of a federal habeas petitioner's counsel to raise a claim in an initial-review collateral proceeding can constitute cause if: (1) PCRA counsel's failure itself constituted ineffective assistance of counsel under <u>Strickland</u>, 466 U.S. at 687; and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one." <u>Martinez</u>, 566 U.S. at 14.  "Under <u>Strickland</u>, courts are precluded from finding that counsel was ineffective unless they find both that counsel's performance fell below an objectively unreasonable standard, and that the defendant was prejudiced by that performance."  <u>Marshall v. Hendricks</u>, 307 F.3d 36, 85 (3d Cir. 2002).  A petitioner must overcome the strong presumption that his trial counsel's conduct fell "within the wide range of reasonable professional assistance" and that counsel "made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690.  Even if a petitioner demonstrates that his attorney's performance fell below prevailing professional norms, habeas relief will only be available if he further demonstrates that this deficient performance prejudiced his defense.  A petitioner must show that there is "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694.  The court may deny an ineffective assistance of counsel claim solely upon a petitioner's failure to make a sufficient showing under either prong.  <u>Id.</u> at 687, 697.

In the case at bar, the Superior Court determined that, although this ineffectiveness claim was waived, it was nevertheless meritless. The Court noted that Muhammad's sentencing claims were raised in a post-sentence motion to modify sentence, which was ultimately denied. The Superior Court therefore concluded that counsel cannot be held ineffective for failing to raise them. We agree. The underlying ineffective assistance of counsel claims related to Muhammad's sentencing were found to be meritless or insubstantial and, therefore, PCRA counsel's failure to advance these claims cannot constitute cause to excuse procedural default. Any claim for relief under <u>Martinez</u> fails.

The court finds that Muhammad has failed to establish any cause and prejudice to excuse his procedural default of this claim. Nor is there any indication that a failure to review this claim will result in a fundamental miscarriage of justice. <u>See</u> <u>Schlup</u>, 513 U.S. at 327. Consequently, Muhammad is precluded from pursuing federal habeas corpus relief with regard to this issue.

As previously noted, any attempt by Muhammad to exhaust his state remedies at this time would be futile, because these claims are procedurally defaulted due to waiver of the claims and expiration of the PCRA statute of

limitations.  As such, Muhammad is in procedural default for failing to comply with the state filing requirements.[7]

### D. Post-Sentence Counsel Conflict of Interest Claim

Muhammad asserts that post-sentence counsel, Ari Weitzman, Esquire, of the Dauphin County Public Defender's Office, had a conflict of interest when he filed a post-sentence motion on his behalf because the Dauphin County Public Defender's represented Muhammad's co-defendant in the matter.[8]  (Doc. 27-1 at 35-36).  In his PCRA petition, Muhammad asserted that this was an obvious conflict of interest, which Weitzman failed to disclose.  (Doc. 14-8 at 29-30, PCRA Petition).  The PCRA court's memorandum and order did not address Muhammad's conflict of interest claim.  (See Doc. 14-10 at 22-24, Commonwealth v. Muhammad, Nos. 2967 CR 2002, 3009 CR 2002, PCRA Memorandum and Order (September 13, 2006)).  Consequently, we will review the claim *de novo*.

---

[7] Because sentencing is generally a matter of state criminal procedure, a federal court will not review a sentence in a habeas proceeding unless it exceeds the statutory maximum.  See Jones v. Superintendent of Rahway State Prison, 725 F.2d 40 (3d Cir. 1984).  Muhammad does not allege, nor can he establish that his sentence exceeds the statutory maximum.  Muhammad was sentenced to an aggregate sentence of 37 to 90 years' imprisonment for attempted murder, robbery, criminal conspiracy, aggravated assault, flight to avoid apprehension, escape, resisting arrest, and false identification to law enforcement authorities.  See 18 Pa.C.S.A. §§ 3701(a)(1), 903, 2702(a)(1), 5126, 5121(a), 5104, 4906(a).  Each sentence imposed was within the standard range.  (See Doc. 14-7 at 52-56).  Thus, his claim, construed as a federal constitutional violation, would fail.

[8] The Dauphin County Public Defender's Office did not represent Muhammad during trial.  Assistant Public Defender Weitzman only filed a post-sentence motion on Muhammad's behalf.

A claim of ineffectiveness of counsel based on a conflict of interest will presume prejudice if a petitioner can establish that counsel was actively representing conflicting interests and the conflict had an adverse affect on specific aspects of counsel's performance. Strickland, 466 U.S. at 692 (citing Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). To prove that an actual conflict of interest adversely affected counsel's representation, a petitioner must "identify a plausible defense strategy that could have been pursued, and show that this alternative strategy inherently conflicted with, or was rejected due to [counsel]'s other loyalties or interests." Hess v. Mazurkiewicz, 135 F.3d 905, 910 (3d Cir. 1998) (citing United States v. Gambino, 864 F.2d 1064, 1070 (3d Cir. 1988)). A petitioner must identify a viable defense strategy that was not pursued by his attorney because of the conflict of interest. Morris v. Beard, 633 F.3d 185, 198 (3d Cir. 2011); United States v. Morelli, 169 F.3d 798, 810 (3d Cir. 1999); United States v. Gambino, 788 F.2d 938, 951 (3d Cir. 1986). Multiple representation of co-defendants does not violate the Sixth Amendment unless it gives rise to a conflict of interest. See Holloway v. Arkansas, 435 U.S. 475, 482 (1978).

Upon review of the record, the court finds no evidence that counsel's actions "actually affected the adequacy of his representation." Cuyler, 446 U.S. at 349-50. Muhammad simply asserts, without any supporting information, that post-sentence counsel was ineffective because the Public Defender's Office also represented his co-defendant. Muhammad does not point to any specific conflict of interest that affected his rights in post-sentence proceedings. See, e.g., Duncan v. Morton, 256 F.3d 189, 198 (3d Cir. 2001) (holding that the district court's determination that two

lawyers who shared office space "were not partners for the purposes of multiple representation is not an unreasonable one"); United States v. Pungitore, 910 F.2d 1084, 1140 (3d Cir. 1990). Rather, the record reflects that Attorney Weitzman preserved Muhammad's rights by filing a motion for modification of sentence and a notice of appeal. There is no indication that the Public Defender's Office expressed to the state court any concern regarding a conflict of interest. Muhammad has failed to demonstrate either that his post-sentence counsel actively represented conflicting interests, or that counsel's performance was adversely affected by an actual conflict of interest. See Strickland, 466 U.S. at 692; Cuyler, 446 U.S. 335; see also Mickens v. Taylor, 535 U.S. 162, 171 (2002) ("[W]e think 'an actual conflict of interest' meant precisely a conflict *that affected counsel's performance* – as opposed to a mere theoretical division of loyalties.") (quoting Wood v. Georgia, 450 U.S. 261, 273 (1981) (emphasis in original)). Accordingly, because Muhammad has failed to meet the burden of proof established by Strickland and Cuyler, his final ground for habeas relief is without merit and will be denied.

## VI.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." <u>Miller-El</u>, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, a COA will not issue.

## VII.    Conclusion

For the reasons set forth above, the court will deny the amended petition for writ of habeas corpus. A separate order shall issue.


                                              /S/ CHRISTOPHER C. CONNER
                                              Christopher C. Conner, Chief Judge
                                              United States District Court
                                              Middle District of Pennsylvania


Dated:        March 29, 2019